UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
PATRYK WILK, PAWEL KOTWICA, PAWEL
WIACEK, TOMASZ WISLOCKI and FELIX LEWIS,
individually and on behalf of all other persons similarly
situated,

Case No.:

**VERIFIED COMPLAINT**

CLASS / COLLECTIVE ACTION

JURY TRIAL DEMANDED

Plaintiffs,

- against -

QUALITY INSTALLATIONS OF NY, INC.,
QUALITY INSTALLATIONS OF NEW YORK 2,
INC., EAST COAST OFFICE FURNITURE INC.,
ANTONI PERLICKI, DANIEL PERLICKI,
MAREK BABULA, ANNA PERLICKA,
GRZEGORZ NOWAK, GRZEGORZ ZUBER,
SEBASTIAN PLOSZEJ, PIOTR MILEWSKI,
RONALD RAMCHARRAN, RACH KLEPADLO
and SYLVESTER SADOWSKI,

Defendants.
----------------------------------------------------------------X

Plaintiffs, PATRYK WILK, PAWEL KOTWICA, PAWEL WIACEK, TOMASZ

WISLOCKI and FELIX LEWIS (collectively "Plaintiffs"), on behalf of themselves and on behalf

of all others similarly situated, by and through their attorneys, Marzec Law Firm P.C., as and for

their Complaint against the Defendants, QUALITY INSTALLATIONS OF NY, INC., QUALITY

INSTALLATIONS NEW YORK 2, INC. and EAST COAST OFFICE FURNITURE INC.

(collectively "Corporate Defendants"), ANTONI PERLICKI, DANIEL PERLICKI, MAREK

BABULA, ANNA PERLICKA, GRZEGORZ NOWAK, GRZEGORZ ZUBER, SEBASTIAN

PLOSZEJ, PIOTR MILEWSKI, RONALD RAMCHARRAN, RACH KLEPADLO and

SYLVESTER SADOWSKI (collectively "Individual Defendants") (Corporate Defendants and

Individual Defendants collectively "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs on behalf of themselves and on behalf of all others similarly situated bring

this action to recover unpaid wages, unpaid overtime wages, liquidated damages and reasonable

attorneys' fees under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*) and the various wage orders promulgated thereunder by the U.S. Department of Labor and codified under 29 C.F.R. § 552 *et seq.* ("FLSA"), New York Labor Law Articles 6 and 19 and various wage orders promulgated thereunder by the New York State Department of Labor and codified at 12 N.Y.C.R.R.§ 137-144 ("NYLL"), and the New York State common law.

2.      Additionally, this action seeks damages, liquidated damages and punitive damages arising out of breach of contract and unjust enrichment by certain or all Defendants and against the Individual Defendants for intentionally inducing the Corporate Defendants into violating the employee contract between the Corporate Defendants and the Plaintiffs and others similarly situated of wages they rightfully earned working for the Corporate Defendants.

3.      Plaintiffs and others similarly situated employees were employed by the Corporate Defendants but were not compensated in full.

## PARTIES

4.      Plaintiff PATRYK WILK is a citizen of New York with an address at 61-36 Linden Street, Apt. 2, Ridgewood, NY 11385. He was employed by the Corporate Defendants from approximately February 2022 through June 9, 2023.

5.      Plaintiff PAWEL KOTWICA is a citizen of New York with an address at 60-10 Fresh Pond Road, #2-B, Maspeth, NY 11378. He was employed by the Corporate Defendants from August 1, 2017 through on or about March 2022.

6.      PAWEL WIACEK is a citizen of New York with an address at 7801 64th Street, Flushing, NY 11385. He was employed by the Corporate Defendants from June 2013 through in or about 2022.

7.    TOMASZ WISLOCKI is a citizen of New York with an address at 7111 Cooper Avenue, Apt. 3, Glendale, NY 11385. He was employed by the Corporate Defendants from in or about 2014 through in or about 2022.

8.    Plaintiff FELIX LEWIS is a citizen of Florida with an address at 602515 Banks View Circle, Apt 211, Apopka, FL 32703. He was employed by the Corporate Defendants from in or about 2015 through April 2023.

9.    At all times relevant herein, the Corporate Defendant QUALITY INSTALLATIONS OF NY, INC. ("QUALITY INSTALLATIONS" or "Corporate Defendant") was and is a corporation duly organized under, and existing by virtue of, the laws of the State of New York and having its principal place of business at 5844 Maurice Ave, Maspeth, New York 11378.

10.    At all times relevant herein, the Corporate Defendant EAST COAST OFFICE FURNITURE INC. ("EAST COAST FURNITURE" or "Corporate Defendant") was and is a corporation duly organized under, and existing by virtue of, the laws of the State of New York and having its principal place of business at 1888 Cornelia Street, Ridgewood, New York 11385.

11.    At all times relevant herein, the Corporate Defendant QUALITY INSTALLATIONS NEW YORK 2, INC. (""QUALITY INSTALLATIONS 2" or "Corporate Defendant") was and is a corporation duly organized under, and existing by virtue of, the laws of the State of New York and having its principal place of business at 5844 Maurice Ave, Maspeth, New York 11378.

12.    The Individual Defendants were the employees of the Corporate Defendants and served in the following capacities:

a. ANTONI PERLICKI all relevant times was and is the Chief Executive Officer, owner, manager and supervisor of the Corporate Defendants QUALITY INSTALLATIONS OF NY, INC. and QUALITY INSTALLATIONS NEW YORK 2, INC. and EAST COAST OFFICE FURNITURE INC., and ultimately charged with payment of wages to Plaintiffs and others similarly situated;

b. DANIEL PERLICKI at all relevant times was and is a joint owner, supervisor and manager of the Corporate Defendants QUALITY INSTALLATIONS OF NY, INC. and QUALITY INSTALLATIONS NEW YORK 2, INC and was charged with payment of wages to Plaintiffs and others similarly situated;

c. MAREK BABULA at all relevant times was and is a supervisor and manager and work dispatcher of the Corporate Defendant QUALITY INSTALLATIONS and was charged with payment of wages to Plaintiffs and others similarly situated; and

d. ANNA PERLICKA at all relevant times was and is the bookkeeper and manager of the Corporate Defendant QUALITY INSTALLATIONS and was charged with payment of wages to Plaintiffs and others similarly situated.

e. GRZEGORZ NOWAK at all relevant times was and is a supervisor and manager of Corporate Defendant QUALITY INSTALLATIONS 2 and was charged with payment of wages to Plaintiffs and others similarly situated.

f. GRZEGORZ ZUBER at all relevant times was and is a supervisor and manager of Corporate Defendant QUALITY INSTALLATIONS 2 and was charged with payment of wages to Plaintiffs and others similarly situated.

g. SEBASTIAN PLOSZEJ at all relevant times was and is a supervisor and manager of Corporate Defendant QUALITY INSTALLATIONS 2 and was charged with payment of wages to Plaintiffs and others similarly situated.

h. PIOTR MILEWSKI at all relevant times was and is a supervisor and manager of the Corporate Defendant QUALITY INSTALLATIONS 2 and was charged with payment of wages to Plaintiffs and others similarly situated.

i. RONALD RAMCHARRAN was at all relevant times the accountant for QUALITY INSTALLATIONS OF NY, INC. charged with tracking and calculating Plaintiffs' hours worked and prepared cash envelopes for payroll to be paid to each Plaintiff.

j. RACH KLEPADLO was at all relevant times the Human Resources manager for QUALITY INSTALLATIONS 2.

k. SYLVESTER SADOWSKI at all relevant times was and is a supervisor and manager of the Corporate Defendant QUALITY INSTALLATIONS 2 and was charged with payment of wages to Plaintiffs and others similarly situated.

13. The individual Defendant ANTONI PERLICKI maintains an address c/o QUALITY INSTALLATIONS OF NY, INC. at 5844 Maurice Ave, Maspeth, New York 11378.

14. The individual Defendant DANIEL PERLICKI maintains an address c/o QUALITY INSTALLATIONS OF NY, INC. at 5844 Maurice Ave, Maspeth, New York 11378.

15. The individual Defendant MAREK BABULA maintains an address c/o QUALITY INSTALLATIONS OF NY, INC. at 5844 Maurice Ave, Maspeth, New York 11378.

16. The individual Defendant ANNA PERLICKA maintains an address c/o QUALITY INSTALLATIONS OF NY, INC. at 5844 Maurice Ave, Maspeth, New York 11378.

17.    The individual Defendant GRZEGORZ NOWAK maintains an address c/o QUALITY INSTALLATIONS OF NY, INC. at 5844 Maurice Ave, Maspeth, New York 11378. Mr. Nowak was at all relevant times the manager and supervisor of Plaintiffs, charged with tracking hours, inquired about jobs and employee hours worked, was the individual who submitted all employee hours to the offices of the Corporate Defendants.

18.    GRZEGORZ ZUBER maintains an address c/o QUALITY INSTALLATIONS OF NY, INC. at 5844 Maurice Ave, Maspeth, New York 11378. Mr. Zuber was at all relevant times a foreman and job site project supervisor, charged with tracking Plaintiff's work and hours.

19.    SEBASTIAN PLOSZEJ maintains an address c/o QUALITY INSTALLATIONS OF NY, INC. at 5844 Maurice Ave, Maspeth, New York 11378. Mr. Ploszej was at all relevant times a foreman and job site project supervisor, charged with tracking Plaintiff's work and hours.

20.    PIOTR MILEWSKI maintains an address c/o QUALITY INSTALLATIONS OF NY, INC. at 5844 Maurice Ave, Maspeth, New York 11378. Mr. Sadowski was at all relevant times a foreman and job site project supervisor, charged with tracking Plaintiff's work and hours.

21.    RONALD RAMCHARRAN maintains an address c/o QUALITY INSTALLATIONS OF NY, INC. at 5844 Maurice Ave, Maspeth, New York 11378. Mr. Ramcharran was at all relevant times the accountant, charged with tracking and calculating Plaintiff's work hours and payment of wages.

22.    RACH KLEPADLO maintains an address c/o QUALITY INSTALLATIONS OF NY, INC. at 5844 Maurice Ave, Maspeth, New York 11378. Ms. Klepadlo was at all relevant times the Human Resources manager.

23.     SYLVESTER    SADOWSKI    maintains    an    address    c/o    QUALITY

INSTALLATIONS OF NY, INC. at 5844 Maurice Ave, Maspeth, New York 11378. Mr. Sadowski

was at all relevant times a supervisor and project worksite manager.

24.     The Individual Defendants were officers, managers, agents or directors of the

Corporate Defendants responsible for supervising Plaintiffs and others similarly situated and hiring

and firing employees and are individually responsible for unpaid wages under Federal and New

York Law and otherwise.

25.     Individual Defendants are charged with payment of wages to Plaintiffs and other

similarly situated as a matter of law.

## JURISDICTION AND VENUE

26.     The Court has personal jurisdiction over Corporate Defendants in that Corporate

Defendants are domiciled and incorporated in the State of New York, are authorized to do business

in the State of New York, and regularly conduct business in New York. Corporate Defendant

QUALITY INSTALLATIONS and QUALITY INSTALLATIONS 2 maintain an office in New

York, Kings County and Corporate Defendant EAST COAST FURNITURE maintains an office

in New York, Queens County and all three conduct their activities from New York State and within

this District.

27.     The Court has personal jurisdiction over the Individual Defendants in that they are

residents of New York and regularly conduct business in New York, maintain an office in New

York and conduct their activities from New York State and within this District.

28.     Defendants regularly transact a substantial amount of business and have substantial

contacts in New York.

29.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this

action arises under 29 U.S.C. § 207 (FLSA) and 28 U.S.C. § 1337 (Regulation of Commerce).

30.     This Court has jurisdiction over Plaintiffs' state law claims pursuant to U.S.C §
1367 because those claims are related to Plaintiffs' federal claims and form part of the same case
or controversy.

31.     This Court is a proper venue for this action, pursuant to, among other grounds, 28
U.S.C. § 1391(b) because substantial events or omissions giving rise to Plaintiffs' claims occurred
in this District, and Defendants are domiciled and are residents of this District.

## **FACTUAL BACKGROUND**

32.     Defendants QUALITY INSTALLATIONS OF NY, INC. and QUALITY
INSTALLATIONS NEW YORK 2, INC. (collectively "Quality") are both engaged in the business
of carpentry and construction services and specialize in assembling, installing and delivering
furniture to warehousing, including providing a wide range of services to furniture dealers and
diverse individual companies throughout the United States.

33.     Defendant EAST COAST OFFICE FURNITURE INC. is company providing a
wide range of office furniture and provides services such as office furniture installation and
delivery throughout the United States.

34.     All Plaintiff were employed as drivers and furniture installers by Defendants.

35.     Quality's principal place of business contains multiple surveillance cameras and
each company vehicle has a GPS tracker.

36.     Corporate Defendants are employers subject to the FLSA, as Corporate Defendants
engage in an enterprise whose annual volume of sales made or business done is not less than
$500,000.00, the activities of which affect interstate commerce, in that Corporate Defendants
employ workers who provide various services inside and outside of New York and have moved in
interstate and/or international commerce.

37.    Upon information and belief, Corporate Defendants employ over 100 employees and during Plaintiffs' tenure, more than 100 persons worked for Corporate Defendants.

38.    At all relevant times herein, Corporate Defendants operated as an integrated enterprise. Plaintiffs and similarly situated employees work interchangeably among each Corporate Defendant's work projects, and Plaintiffs and similarly situated employees were subject to the same pay practice.

39.    Patryk Wilk, throughout his employment with Corporate Defendants, was paid his wages by cash only (except for one time when he was paid by check which was later corrected). He would typically receive an envelope containing cash for payment of wages. Mr. Wilk worked on average 70-80 hours per week, not including the company transporting to project worksites from Quality's place of business.

40.    On average, Mr. Wilk spent 8 hour per week being transported in Defendants' company van from the jobsite to Quality's place of employment. Mr. Wilk was not paid for any of the travel time to and from each project worksite.

41.    Pawel Kotwica was compensated by a combination of checks and cash. Each payroll check Mr. Kotwica received was for no more than 40 hours of work in any given workweek and was always paid at straight time. Any cash received by Mr. Kotwica compensated him for all hours worked over 40 hours per given week, paid in cash and calculated as straight time instead of the proper overtime wage rate of one and one-half times the employee's regular rate.

42.    Defendant Grzegorz Nowak would call each employee, including each Plaintiff herein, to confirm each employee's project worksite and total hours worked each day. Mr. Nowak would enter the hours into a spreadsheet. In or about mid-June 2023, Mr. Wilk called Mr. Nowak

requesting a copy of all of the hours worked. Mr. Nowak replied he would have to speak to the boss and never provided Mr. Wilk with a report of all hours worked.

43.     Mr. Nowak tracked employee hours by generating a daily and weekly spreadsheet maintained as a business record of Defendant Quality.

44.     On another occasion, in or about January 2023, Mr. Wilk witnessed Mr. Nowak inputting employee hours into the above-referenced spreadsheet using a computer located at Quality's office, upstairs on the right hand side of a staircase.

45.     Defendant Ronald Ramcharan, the bookkeeper/accountant would process payroll and payment of wages using the information provided by Mr. Nowak.

46.     Plaintiffs were entitled to be paid a proper wage for their work for Defendants in any given workweek.

### Employee Patryk Wilk

47.     Plaintiff Patryk Wilk was employed by Corporate Defendants from February 2022 through June 9, 2023.

48.     Mr. Wilk was paid $20 per hour and received an increase to $22 per hour after six months of employment.

49.     At least during one payroll period, instead of being paid $22/hour base, he was paid $20.00/hour.

50.     Wilk was paid straight time for overtime hours worked and was not paid for all hours worked.

51.     By way of an example, on or about February 2023, Plaintiff Wilk arrived at 6:00 AM to the employer's place of business. At 6:30 AM, a company van would take Wilk and four other employees to a job worksite located in White Plains, New York. The job involved an office

of Wells Fargo Bank. The company van arrived at the job site at approximately 7:30 AM. The Forman on this job was Defendant Sylvester Sadowski. Mr. Wilk and other employees on the job proceeded to work all day and finished work at 7:00 PM. The job involved delivering and assembling office furniture. At about 7:10 PM the company van took Mr. Wilk and the other employees back to the company's place of business, arriving at approximately 8:30 PM. In this case, Mr. Sadowski relayed the hours worked that day. Mr. Wilk had half an hour for lunch. Mr. Wilk worked 14 and a half hours that day, less than half an hour for lunch but was only paid for 11 hours. Mr. Wilk should have been paid, however, for all the time worked between 6:00 AM and 8:30 PM, minus lunch of 30 minutes, or a total of 14 hours that day. Mr. Wilk worked on this particular job for approximately 1.5 weeks.

52.    In the foregoing example, Wilk was not paid for 3 hours of work for each day worked for 1.5 weeks.

53.    By way of another example, about January 2023, Mr. Wilk was sent to work in Atlanta, GA for eight weeks. On Monday, Mr. Wilk would report at the employer's place of business at 4:30 AM. The company van would transport Mr. Wilk and three other employees to and from the project worksite. Mr. Wilk would start at 7:00 AM and would finish work at 7:00 PM or 8:00 PM. Mr. Wilk was paid straight time for all hours worked and was not paid the proper overtime rate for all hours worked above 40 hours in any given workweek.

54.    On or about 2023, Wilk was sent to work at City College – CUNY. The job involved delivery and installation of furniture. Mr. Wilk worked 12 hours per day at the CUNY project worksite. Travel time to and from the project worksite was not paid at all. Overtime hours were not paid at the proper overtime rate. Moreover, the base rate paid was not a prevailing rate, but simply the same base rate paid as any other job that did not require a prevailing / union level wage.

55.     The job at City College lasted approximately three weeks, with breaks.

56.     By way of another example, during the one week pay period ending January 28, 2023 with the pay date of February 3, 2023. Mr. Wilk was paid for 76 ½ hours at a rate of $22 per hour for all hours worked in total sum of $1,683. No overtime rate was applied for all hours worked above 40 hours in any given workweek. Mr. Wilk should have been paid, at minimum, $880 for the first 40 hours worked and then $31 per hour for all overtime hours worked or $1,204.50 for the remaining 36.5 in overtime hours worked. The total wage Mr. Wilk should have been paid was $2,084.50 and not $1,683, for a $401.50 underpayment. This sum does not include travel time to and from the project worksite and Quality's place of business, averaging 8 hours per week worked. Unpaid travel time amounted to $264 of which no portion was paid.

57.     By way of another example, during the pay period ending on June 10, 2023, Mr. Wilk worked 52 hours and was only paid at a straight time rate of $22 per hour for all 52 hours worked in the total sum of $1,144. Mr. Wilk should have been paid $880 for the first 40 hours worked and $396 for 12 hours of overtime worked daily calculated at $33 per hour for a total of $1,276 due that week, for a $132 underpayment during that week. Mr. Wilk was not paid for any travel time in the company van to and from the project worksite.

58.     By way of an example, Mr. Wilk worked at City College, a College part of the CUNY system.

59.     Wilk also worked at the Fashion Institute of Technology or "FIT".

60.     While working at FIT, Wilk worked in excess of 10 hours per day. On some days, Mr. Wilk worked at FIT 12 hours per day.

61.     Upon information and belief, Mr. Wilk worked on public hospitals, other schools and colleges, law enforcement offices, etc. and other public works projects.

62.     When Mr. Wilk worked at Hudson Yards, Defendant Marek Babula would give specific instructions not to display the Quality logo on shirts as the job required union wages to be paid.

63.     The payment of wages to Mr. Wilk was typical of how other Quality employees were paid. By way of an example, Dominik Zak was an employee of Quality for approximately 3 months. Mr. Zak worked 69 ¼ hours for the one week period ending April 1, 2023, with the pay date of April 7, 2023. He was paid $20 per hour for each and every 69 ¼ hours worked during that period, amounting to $1,385. He should have been paid $800 for the first 40 hours of work, and the 29 ¼ hours should have been calculated at an overtime rate of $30 per hour, amounting to $877.50. The total amount due for the week in question should have been $1,677.50 and not $1,385. Mr. Zak was underpaid $292.50 for that week, not including any travel time to and from the project worksite and Quality's place of business.

**Employee Pawel Wiacek**

64.     Plaintiff Pawel Wiacek was hired by East Coast on or about June 2013 and was paid $17 per hour.

65.     Mr. Wiacek received raises and by 2022 was paid $30 per hour.

66.     At all times alleged herein, Mr. Wiacek was hired as a driver, loading and unloading the truck.

67.     Before the Covid-19 pandemic, Mr. Wiacek worked, on average, 80 hours per week.

68.     After the Covid-19 pandemic, Mr. Wiacek's hours averaged and continue to average 50-60 hours per any given workweek worked.

69.     Mr. Wiacek was not paid ½ hour per day for lunch.

70.    Despite working significant overtime hours, Mr. Wiacek was not paid the proper overtime rate per hour of one and one-half times the employee's regular hourly rate for all hours worked above 40 hours per week.

71.    In fact, during his entire employment, Mr. Wiacek was only paid at a "straight" hourly rate. For example, in 2022, Mr. Wiacek was paid $30.00 per hour, regardless of whether he worked any overtime hours in any given workweek.

72.    Mr. Wiacek was paid for the first 40 hours per week by check.

73.    For all hours worked above 40 hours per week, Mr. Wiacek would receive an envelope with a payroll statement and a check for payment of 40 hours worked, and cash for the overtime hours worked paid as straight time.

74.    Most recently, presumably to show facial "compliance" with labor laws, Mr. Wiacek has been receiving payroll statements that reflect regular time and some overtime calculated at an overtime rate of 1.5 times the regular rate.

75.    The payroll statements received, however, are false and do not reflect Mr. Wiacek's actual wages paid.

76.    By way of another example, Quality paid Mr. Wiacek $803.12 net pay as reflected on payroll check number 17014, dated July 7, 2023.

77.    That paycheck was for the June 25, 2023 to July 1, 2023 pay period.

78.    For that period, Quality claimed that Mr. Wiacek worked a total of 53 hours that week.

79.    The first 40 hours worked were paid at $18.00 per hour and 13 overtime hours were paid at $27.00 per hour.

80.    Wiacek was last paid around $18.00 per hour in 2014.

81.    The payroll statement provided to Mr. Wiacek was false.

82.    In or about 2021, Mr. Wiacek received a Notice and Acknowledgement of Pay Rate.

83.    The notice specified:

a.    Rate of pay of $26.00 per hour; and

b.    Overtime rate of pay of $39.00 per hour.

84.    By way of further example, Mr. Wiacek has worked several very long days during the week of September 5 to September 10, 2022:

a.    15 hours on September 8, 2022 (excluding 30 minutes for lunch);

b.    18 hours on September 9, 2022 (excluding 30 minutes for lunch); and

c.    14.5 hours on September 10, 2022 (excluding 30 minutes for lunch).

85.    Long hours were typical. For example, October 3, 2022, Wiacek worked 17.3 hours (excluding 30 minutes for lunch).

86.    On July 13, 2023, Mr. Wiacek worked 18 hours (excluding 30 minutes for lunch). He left work at midnight. The next morning on July 14, 2023, he was back at work at 6:00 AM and worked 10 hours that day (excluding 30 minutes for lunch).

87.    On June 30, 2021, Mr. Wiacek worked 22.5 hours (excluding 30 minutes for lunch).

88.    Mr. Wiacek also worked at the City College – CUNY project worksite, the project worksite at 26 Federal Plaza Building, Department of Transportation, and other public entity locations.

89.    Defendants work closely with "Empire Office" / Peter Gaslow. Upon information and belief, Empire Office and Quality have a close working relationship. Empire pays Quality per

employee provided a sum of no less than $50.00 per hour, while Quality pays its employees, including Plaintiffs herein, half that amount, and often less than half.

90.    Moreover, upon information and belief, Empire pays Quality for its employees working overtime hours at a correct overtime hourly wage. For example, regular hours may be paid $50.00 / hour for regular time, and $75.00 for overtime. While receiving such compensation from Empire, and upon information and belief, being contractually bound to pay an appropriate lawful rate of pay to its employees, Quality has breached the agreement and course of dealing with Empire and has failed to comply with labor laws.

91.    Plaintiffs herein, and other similarly situated employees of Quality, are third-party beneficiaries of the agreements and contracts between Quality and Empire and are entitled to receive all benefits contracted for between Empire and Quality.

92.    In addition, Mr. Wilk worked at Empire's Manhattan showroom assembling furniture.

93.    On or about 2022, Mr. Wilk and others similarly situated were sent to the apartment belonging to Peter Gaslow, Empire's principal to perform work in cleaning floor to ceiling windows. The job lasted four days, ten hours per day. No overtime wages were paid to Mr. Wilk.

94.    On another occasion, Mr. Wilk and other similarly situated employees were sent to replace a washer at Mr. Gaslow's apartment.

95.    On or about February 2022, Mr. Wilk worked at Empire's place of business approximately 12-14 hours per day, assisting Mr. Arek Arkadiusz (an Empire employee) in welding and preparing metal frames and doors to be painted. The doors were later transported to Peter Gaslow's Connecticut home and installed by Mr. Wilk and others similarly situated, working

about 12 hours per day for one and a half weeks. Travel time for Mr. Wilk's two hour long return trip to Quality's place of business was not paid at all.

96.     As for another example, a higher rate was paid by Empire for any jobs involving walk-ups. Yet, Quality did not its employees, including Plaintiffs herein, a higher rate of pay for such work.

97.     Similarly to the requirement of payment of proper overtime wages and wages for all time worked, Quality was required by law and pursuant to its contractual commitments with Empire to pay prevailing wages / union wages to all employees working on public jobs or jobs requiring payment of prevailing / union wage jobs.

98.     Moreover, Empire foremen were frequently present at the job site providing instruction directly to Quality employees, including Wilk and Kotwica.

99.     Some of the Empire foreman names were Mike Roman and "Anthony".

100.    On one occasion, Jake Carlson of Empire provided instructions and offering "Joe's" assistance by phone, leaving his cell phone.

101.    Instructions were also provided via emails that would be forwarded to Mr. Wilk.

102.    On or about April 19, 2023, Marek Babula forwarded further emails from Empire, including from Marle Witter.

103.    Empire's installation worksheets would be provided to Mr. Wilk.

104.    In or about January 2023, Mr. Wilk worked a job at a hospital.

105.    Quality also performed work for "Jefferson Group". On Jefferson jobs, a foreman was present supervising the work and provided instruction from the Jefferson Group foreman. Mr. Wilk and other Quality employees took instruction from the foreman and carried out his wishes.

106.    Upon information and belief, Mr. Wilk and other similarly situated employees of Quality are third-party beneficiaries of the agreements between Jefferson Group and Quality. Upon information and belief, by virtue of contractual obligation, Quality was to pay its employees, lawfully proper wages. Quality did not.

### Employee Pawel Kotwica

107.    Pawel Kotwica was employed by Corporate Defendants from 2018 through April 30, 2022.

108.    Pawel Kotwica was initially paid $17 per hour, increasing to $19 per hour a few months later, then a year or so later, he received $24 per hour. In or about 2022, he received a raise to $27 per hour.

109.    At all times, Pawel Kotwica was paid straight time regardless of all overtime hours worked.

110.    Pawel Kotwica was usually paid by combination of a payroll check and cash. The first 40 hours worked in any given workweek would be paid by check while any overtime hours were paid in cash.

111.    On some occasions, some payroll checks would include overtime payment at an overtime rate, but the hours listed were not reflective of actual hours worked in excess of 40 hours per week. The overtime rate listed on such checks was nullified by having less hours paid in cash.

112.    At all times, Pawel Kotwica was paid straight time for all overtime hours worked, and even then, not all hours were paid.

113.    By way of an example, the pay period of February 20, 2022 to February 26, 2022, Mr. Kotwica was paid for 40 hours at the regular rate per hour and 2 hours at the overtime rate per hour. The regular rate listed on the payroll statement was $24 per hour while the overtime rate

listed was $36.00 per hour. Mr. Kotwica, however, worked on average between 60-70 hours per week. Thus, the payroll check for the foregoing pay period did not cover all hours worked and the cash payment he received was appropriately adjusted to take into account the rate listed on the face of the payroll statement.

114.    By way of another example, for the pay period beginning March 20, 2022 and ending March 26, 2022, Mr. Kotwica's payroll statement reflects 40 hours worked and paid at the regular hourly rate and 23.3 hours of overtime hours worked. Despite having received a raise from $24/hour to $27/hour on or about February / March 2022, the payroll statement falsely reflected the base rate as $16/hour and an overtime rate of $24/hour. Instead, Mr. Kotwica received an additional cash payment that paid him a sum equal to $27 per hour for 63.3 hours worked that week. Mr. Kotwica was paid below a lawful rate of pay as his payroll check was not calculated based on the proper overtime rate per hour. Accordingly, the payroll statement is false.

115.    Likewise, on April 8, 2022, Mr. Kotwica received a payroll statement for the pay period beginning on March 27, 2022 and ending on April 2, 2022. The payroll statement listed 40 regular hours worked and 20.3 overtime hours worked. According to the payroll statement, Mr. Kotwica was paid a sum of $16.00 per hour for the first 40 hours worked that week, and $24.00 per hour for all overtime hours worked. The payroll statement was a mere fiction, however, as he was not paid the proper overtime rate for each hour of overtime worked. The net result of the cash payment and the payroll check received by Mr. Kotwica that week was $27 per hour at a straight time rate and no hours worked paid at the proper overtime hourly rate.

116.    By way of an example, Kotwica received a payroll check for the period beginning on May 17, 2020 and ending on May 23, 2020, listing 40.3 regular hours worked. He was paid $24

per hour for all hours worked and not paid the proper overtime rate of one and a half times the hourly rate for the first 40 hours worked that week.

117.    Mr. Kotwica would typically arrive at Quality's place of business every morning between 5:30 AM and 7:00 AM, as required. A company van would bring Mr. Kotwica to the job site. At the end of the day, Mr. Kotwica would be dropped off at the employer's place of business. The employer, however, did not pay for travel time to and from the project worksite.

118.    By way of another example, on or about April 21, 2021, Mr. Kotwica was assigned to a project worksite in Bridgehampton, Long Island. Mr. Kotwica would arrive at the employer's place of business at 5:30 AM. Thereafter, a company van would transport him and others to Bridgehampton, NY. Mr. Kotwica worked until 6:00 PM. Mr. Kotwica was paid for 12 hours per day calculated at the regular hourly rate. Travel time to and from the project worksite -- 2 hours to 2.5 hours -- was not paid at all at any rate.

119.    By way of another example, Mr. Kotwica spent about 2 months working at a project worksite in New Jersey. It took no less than 1 hour to 1.5 hours in travel time to and from the project worksite. Despite travelling in the company van, Mr. Kotwica was not paid for any travel time.

120.    As a general matter, Daniel Perlicki would text Mr. Kotwica instructions for appearing the next day at work. By way of an example, on July 9, 2021, Daniel Perlicki sent a text message to Mr. Kotwica stating:

Tomorrow 6:30 am
Shop
520 Madison AV. 8 am
Janusz. Sed. Truck
Przemek. Sed Truck
Rafal G. Bus
Lalo
Ivan Damian

Jose
Jacek
Marek J
Chrystian M
Pawl K
Sylvwek S. Cube

Sed. Truck referred to a particular motor vehicle as did "Cube" and "Bus". These company vehicles transported Mr. Kotwica and other similarly situated employees to the job site.

121.    On another occasion, Marek Babula texted Mr. Kotwica on May 20, 2021, stating: "530am Mercedes Maniek pawel krystian Robert jacek kamil". Mercedes was the type of company car that would bring a crew to the job site.

**Employee Tomasz Wislocki**

122.    Tomasz Wislocki was employed as a driver by Corporate Defendants since 2014.

123.    Mr. Wislocki was initially paid $19 per hour, increasing to $21 per hour a few months later, then two years later he received $24 per hour and in or about 2018 he was paid $26 per hour. In or about 2019, he received a raise to $27 per hour and in or about 2022 he was paid $30 per hour.

124.    Mr. Wislocki was not paid for travel time to and from the project worksite despite travelling on the company van.

125.    For the past six years, Mr. Wislocki worked 60-70 hours per week but was not paid the proper overtime rate for all hours worked above 40 hours in any given workweek.

126.    Prior to 2017, Mr. Wislocki worked up to 80 hours per week but was not paid the proper overtime rate for all hours worked above 40 hours in any given workweek.

127.    Mr. Wislocki worked at City College – CUNY. The job involved delivery and installation of furniture. Travel time to and from the project worksite was not paid at all. Overtime hours were not paid at the proper overtime rate. Moreover, the base rate paid was not a prevailing

rate, but simply the same base rate paid as any other job that did not require a prevailing / union level wage.

128.    Upon information and belief, Mr. Wislocki worked on public hospitals, other schools and colleges, law enforcement offices, etc. and other public works projects.

## **Employee Felix Lewis**

129.    Felix Lewis was employed as an installer by Corporate Defendants from in or about 2015 through April 2023.

130.    Mr. Lewis was initially paid $22 per hour, increasing to $25 per hour.

131.    On average, Mr. Lewis worked 60 hours per week.

132.    Mr. Lewis was not paid overtime wages for all hours worked in excess of 40 hours per week at the proper overtime rate of one and one-half times the employee's regular hourly rate.

133.    Mr. Lewis worked at City College – CUNY, FIT and NYU project worksites but was not paid prevailing (union) level wages for those jobs but simply the same base rate paid as any other job that did not require a prevailing / union level wage.

134.    Throughout their employment with Defendants, Plaintiffs were not paid for all hours worked.

135.    Plaintiffs was also never paid for time spent waiting to be engaged and traveling to the work site.

136.    Plaintiffs were entitled to be paid a proper wage for the work done.

137.    Despite consistently working in excess of 40 hours per week, Plaintiffs (and others similarly situated) was never paid the proper overtime rate according to law of one-and-half times the regular hourly rate for all hours worked in excess of 40 hours per week.

138.    On average, Plaintiffs worked in excess of 40 hours per week, typically 60-70 hours per week and 6 days per week.

139.    Throughout their employment with Defendants, Plaintiffs were not paid for all hours worked.

140.    Plaintiffs was also never paid for time spent waiting to be engaged and traveling to the work site.

141.    Plaintiffs were entitled to be paid a proper wage for the work done.

142.    Despite consistently working in excess of 40 hours per week, Plaintiffs (and others similarly situated) was never paid the proper overtime rate according to law of one-and-half times the regular hourly rate for all hours worked in excess of 40 hours per week.

143.    On average, Plaintiffs worked in excess of 40 hours per week, typically 60-70 hours per week and 6 days per week.

144.    Plaintiffs occasionally worked on Sundays as well.

145.    Despite the number of hours worked, Plaintiffs and others similarly situated were paid a straight time rate, but never at the proper overtime rate according to law.

146.    Moreover, Plaintiffs were not paid prevailing (union) level wages for certain projects, including in particular: United Nations, a Court in New York, hospitals, prisons (Bronx), public college and other prevailing (union) project worksites.

147.    Plaintiffs would also work on jobs contracted to the Corporate Defendants by Empire Office, a company using union labor and, upon information and belief, subject to contracts that require payment of prevailing / union level wages.

148.    Upon information and belief, Corporate Defendants were required by law or contract to pay prevailing/ union wages to Plaintiffs and others similarly situated on some of their jobs.

149.    The foregoing jobs included, but were not limited to, Empire Office Jobs or specific locations like a public hospital.

150.    Plaintiffs were not paid prevailing/union level wages on any of these foregoing projects.

151.    Defendants never paid Plaintiffs prevailing (union) level wages for any hours worked at any of the project worksites.

152.    Upon information and belief, other similarly situated employees were also underpaid and were not paid the proper time and a half for overtime according to law.

153.    Defendants' failure to pay was motivated by an intention to underpay Plaintiffs and others similarly situated.

**Defendants Failed to Comply with Mandated Wage Notices and Statements**

154.    Defendants failed to display legally required job site notices concerning state and federal labor laws.

155.    NYLL § 195(1) requires employers to provide employees with wage notices within ten business days of the start of employment.

156.    Section 195(1) mandates that "[e]very employer shall ... provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing" several categories of information, including "the regular pay day designated by the employer" and "the physical address of the employer's main office." NYLL § 195(1)(a).

157.    Defendants failed to provide Plaintiffs and all others similarly situated in writing and in English as well as in the language identified by each employee as the primary language of the employee, a notice containing the rate or rates of pay and basis thereof, in contravention of NYLL § 195(1).

158.    At all times relevant to this case, Plaintiffs and all others similarly situated did not receive a wage notice within 10 business days of their first day of employment nor did they receive wage statements in compliance with the NYLL.

159.    Moreover, Defendants did not provide Plaintiffs and all others similarly situated with wage statements that complied with NYLL § 195(3).

160.    Accordingly, Plaintiffs and all others similarly situated are entitled to recover wage-notice statutory damages for each workday that the violations occurred.

161.    Defendants did not track or inaccurately tracked Plaintiffs' and similarly situated employees' hours worked for any given day in a workweek during which the employee was employed.

162.    Plaintiffs lived under constant fear of termination should they speak up to Defendants concerning non-payment of regular and overtime wages.

**Defendants' Conduct was and is Willful and Ongoing**

163.    Defendants as employers have certain statutory obligations towards employees, including the requirement of paying employees at the higher overtime premium of one-and-a-half times their regular rate for each hour worked in excess of 40 per week, and to make, keep, and preserve proper payroll records.

164.    Defendants knowingly failed to pay Plaintiffs and others similarly situated all of the regular and overtime wages to which they were entitled, and to make, keep, and preserve proper

payroll records. Defendants willfully and intentionally created and operated an unlawful pay scheme.

165.   As such, the various violations of the law which are alleged herein were committed knowingly, willfully, and intentionally by Defendants.

166.   At a minimum, Defendants failed to take the necessary steps to ascertain their duties with respect to the payment of wages to their employees.

167.   Upon information and belief these violations are ongoing, as Defendants continue to engage in the wrongful conduct described herein.

**Facts Relating to the Defendants as Employer**

168.   At all relevant times herein, Corporate Defendants were and are controlled by Individual Defendants.

169.   At all relevant times herein, Individual Defendants acted for and on behalf of Corporate Defendants, with the power and authority vested in them as owners, officers and agents of Corporate Defendants, and acted in the course and scope of their duty and function as agents and officers of Corporate Defendants.

170.   At all relevant times herein, Individual Defendants directly managed, handled, or were otherwise ultimately responsible for, the payroll and/or payroll calculations and/or signing or issuing checks and/or cash payroll payments to Plaintiffs -- or directing payroll through other agents -- and others similarly situated.

171.   Individual Defendants had control over the conditions of employment of Plaintiffs and others similarly situated, including hiring and firing, work schedules, the rates and methods of payments of wages, and the maintenance of employment records.

172.   At all relevant times herein, Individual Defendants had operational control over Corporate Defendants.

173.    Corporate Defendants and Individual Defendants are joint employers of Plaintiffs and others similarly situated; and, as a result, all such Defendants, individually and collectively, and jointly and severally, are liable for claims made herein.

**Facts Relating to the Piercing the Corporate Veil**

174.    Upon information and belief, in conducting the affairs of Corporate Defendants QUALITY INSTALLATIONS OF NY, INC. and QUALITY INSTALLATIONS NEW YORK 2, INC. and EAST COAST FURNITURE, ANTONI and DANIEL PERLICKI failed to comply with the required corporate formalities, including recordkeeping, governance requirements, and other formalities.

175.    Upon information and belief, ANTONI and DANIEL PERLICKI used the assets of Corporate Defendants QUALITY INSTALLATIONS OF NY, INC. and QUALITY INSTALLATIONS NEW YORK 2, INC. and EAST COAST FURNITURE, as his own, and otherwise commingled personal assets with the assets of Corporate Defendants QUALITY INSTALLATIONS OF NY, INC. and QUALITY INSTALLATIONS NEW YORK 2, INC. and EAST COAST FURNITURE.

176.    As alleged herein, ANTONI and DANIEL PERLICKI used Corporate Defendants QUALITY INSTALLATIONS OF NY, INC. and QUALITY INSTALLATIONS NEW YORK 2, INC. and EAST COAST FURNITURE in order to circumvent a statute or statutes or accomplish other wrongful acts or in furtherance of other wrongful or inequitable purposes.

177.    Upon    information    and    belief,    Corporate    Defendants    QUALITY INSTALLATIONS OF NY, INC. and QUALITY INSTALLATIONS NEW YORK 2, INC. and EAST COAST FURNITURE, were used to commit employment violations against Plaintiffs and others similarly situated.

178.   Corporate Defendants QUALITY INSTALLATIONS OF NY, INC. and QUALITY INSTALLATIONS NEW YORK 2, INC. and EAST COAST FURNITURE are the alter-egos of ANTONI and DANIEL PERLICKI and as will be established at trial, for the purpose of the claims made by Plaintiffs and others similarly situated herein, and Corporate Defendants QUALITY INSTALLATIONS OF NY, INC. and QUALITY INSTALLATIONS NEW YORK 2, INC. and EAST COAST FURNITURE have no separate legal existence from ANTONI and DANIEL PERLICKI. As such, Corporate Defendants QUALITY INSTALLATIONS OF NY, INC. and QUALITY INSTALLATIONS NEW YORK 2, INC. and EAST COAST FURNITURE, and ANTONI and DANIEL PERLICKI, individually and collectively, and jointly and severally, are liable for all claims made herein.

**COLLECTIVE ACTION ALLEGATIONS**

179.   Plaintiffs brings this action on behalf of themselves and all others current and former employees of Corporate Defendants who did not receive the compensation required by the FLSA and the NYLL and New York common law with respect to their work for Defendants.

180.   Upon information and belief, this class of persons consists of not less than one hundred (100) persons.

181.   There are questions of law and fact common to the class, specifically whether the employment of Plaintiffs and others similarly situated by Corporate Defendants is subject to the jurisdiction and the wage and overtime requirements of the FLSA and NYLL. Only the amount of individual damages sustained by each former or current employee will vary.

182.   Plaintiffs and Defendants' other employees are similarly situated insofar as Defendants instituted a policy not to pay Plaintiffs and others proper overtime wages and regular wages under the FLSA and NYLL.

183.    Plaintiffs brings the FLSA and NYLL claims for relief herein individually and all others similarly situated as a collective action pursuant to the FLSA and NYLL and common law, in respect to all claims that Plaintiffs, and all others similarly situated, have against Defendants as a result of Defendants' violation of the labor laws as complained herein.

## CLASS ACTION ALLEGATIONS

184.    Plaintiffs brings this action on behalf of themselves and all other current and former employees of Defendants who did not receive the compensation required by the FLSA and NYLL and New York common law with respect to their work for Defendants.

185.    Upon information and belief, this class of persons consists of not less than one hundred (100) persons, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed. R. Civ. P. 23(a)(1).

186.    There are questions of law and fact common to the class which predominate over any questions affecting only individual members, specifically: whether the employment of Plaintiffs and others similarly situated by Defendants is subject to the jurisdiction and the wage and overtime requirements of the FLSA and NYLL and New York common law. Only the amount of individual damages sustained by each class member will vary.

187.    The claims of Plaintiffs are typical of the claims of the above-described class in that the acts and practices of the Defendants have similarly affected all of the members of the class.

188.    Plaintiffs will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of the other members of the class.

189.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy under the standards of Rule 23(b)(3) of the Federal Rules of Civil Procedure ("FRCP").

190.    Plaintiffs brings the first, second, and third claims for relief herein on behalf of themselves individually and all others similarly situated as a class action pursuant to Rule 23 of the FRCP in respect to all claims that Plaintiffs, and all others similarly situated, have against the Defendants as a result of Defendants' violation of the FLSA, NYLL, and New York common law.

### First Claim for Relief
### Breach of Contract

191.    Plaintiffs repeats and re-alleges each and every previous allegation as if fully set forth herein.

192.    Plaintiffs and others similarly situated entered into an oral contract with Defendants to supply work in furtherance of Defendants' business in exchange for wages.

193.    Plaintiffs and others similarly situated, satisfactorily supplied labor and otherwise complied with the terms of their employment agreement with Defendants and were therefore entitled to the wages they earned while working for Defendants.

194.    All such contracts of employment between Plaintiffs and others similarly situated and all Defendants were ratified by the Corporate Defendants, including Individual Defendants ANTONI and DANIEL PERLICKI who are the sole shareholders and owners of the Corporate Defendants.

195.    Plaintiffs and all other similarly situated employees of the Corporate Defendants agreed to work for Defendants in exchange for proper and lawful wages to be paid to them on a weekly basis.

196.    Corporate Defendants were direct parties to each and every contract entered into with Plaintiffs and all other employees similarly situated and ratified each and every employee contract for employment with the Corporate Defendants.

197.    Defendants failed or refused to pay Plaintiffs and others similarly situated all of their wages to which they were entitled under their employment agreement.

198.    Defendants' failure or refusal to pay Plaintiffs and others similarly situated all of the wages to which they were entitled under their employment agreements constituted a breach of such employment agreements.

199.    Moreover, Plaintiffs entered into a binding contract with the Defendants wherein the Corporate Defendants breached their contracts with Plaintiffs and all others similarly situated by not paying Plaintiffs and all others similarly situated their proper and lawful pay for work done on behalf of Defendants.

200.    As result of the foregoing, Plaintiffs suffered damages.

201.    By virtue of the foregoing breach of contract by Defendants, Plaintiffs and others similarly situated have been damaged in an amount to be proven at trial based upon an accounting of the amount they should have been paid as contemplated by their employment agreements with the Defendants, less amounts they were actually  paid, together with interests, costs, disbursements, and attorneys' fees.

## Second Claim for Relief – Unpaid Wages and Notice Violations
## NYLL § 650 et Seq.

202.    Plaintiffs repeats and re-alleges each and every allegation above as if set forth fully and at length herein.

203.    At all times relevant to this action, Plaintiffs, and all others similarly situated, were employed by Defendants, within the meaning of the New York Labor Law ("NYLL"), §§ 2 and 651 and the regulation thereunder including 12 N.Y.C.R.R. § 142.

204.    Pursuant to the NYLL, Plaintiffs, and all others similarly situated, were entitled to payment of wages which Defendants intentionally failed to pay in violation of such laws.

205.    Defendants failed to appraise Plaintiffs, and all others similarly situated, of their rights under New York Labor Law.

206.    Defendants failed to furnish Plaintiffs, and all others similarly situated, with a statement with every payment of wages listing gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations § 142-2.7.

207.    Defendants failed to establish, maintain, and preserve for not less than six years, payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4) and New York State Department of Labor Regulation § 142-2.6.

208.    Pursuant to these labor law violations, Plaintiffs, and all others similarly situated, are entitled to recover from Defendants their unpaid wages reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1).

209.    Plaintiffs, and all others similarly situated, are also entitled to recover liquidated damages and civil penalties for an amount equal to one hundred percent of the total such underpayments found to be due.

210.    Due to Defendants' New York Labor Law violations, Plaintiffs, and all others similarly situated, are entitled to recover from Defendants, their unpaid overtime wages, maximum liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to NYLL § 663(1).

211.    Wherefore, Plaintiffs demands a monetary judgment in an amount to be proven at trial, individually and collectively for all other similarly situated employees.

### Third Claim for Relief – Unpaid Wages and Overtime Wages
### Fair Labor Standards Act – 29 U.S.C. 201 et seq.

212.     Plaintiffs repeats and re-alleges each and every allegation above as if set forth fully and at length herein.

213.     Plaintiffs, and all others similarly situated, were, for all times relevant to this Complaint, employed by Defendants.

214.     At all times relevant herein, pursuant to 29 U.S.C. § 207(a), Defendants were engaged in commerce and/or in professional services for commerce and/or Defendants constituted an enterprise engaged in commerce within the meaning of the FLSA.

215.     At all times relevant herein, Defendants failed and willfully failed to pay Plaintiffs and all others similarly situated wages due in violation of 29 U.S.C. § 207.

216.     At all times relevant herein, Defendants failed and willfully failed to pay Plaintiffs, and all others similarly situated, minimum wages.

217.     At all times relevant to this Amended Complaint, Defendants had a policy of willfully failing to make proper wage payments.

218.     As a result of Defendants' failure to compensate Plaintiffs, and all others similarly situated, Defendants have violated and continue to violate FLSA 29 U.S.C. §§ 201 et seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

219.     Defendants failed to make, keep and preserve records with respect to Plaintiffs and all others similarly situated, sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 211(c) and § 255(a).

220.     Defendants conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

221.    As result of the Defendants' failure to properly credit, record, report and/ or compensate Plaintiffs, and all others similarly situated, Defendants have failed to make, keep and preserve records with respect to each of their employees, including Plaintiffs, and all others similarly situated, sufficient to determine the wages, and other conditions and practices of employment in violation of the FLSA 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 211(c) and 215(a).

222.    Defendants have failed to properly disclose or appraise Plaintiffs, and all others similarly situated, of their rights under the FLSA.

223.    As a direct and proximate result of the Defendants' violation of the FLSA, Plaintiffs, and all others similarly situated, are entitled to liquidated damages pursuant to the FLSA.

224.    Plaintiffs, and all others similarly situated, are entitled to an award of reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

225.    Plaintiffs, and all others similarly situated, seek a judgment for unpaid wages, and Plaintiffs also seeks an award of liquidated damages, attorneys' fees, interest and costs as provided by the FLSA.

226.    Due to Defendants' FLSA violations, Plaintiffs, and all others similarly situated, are entitled to recover from Defendants their unpaid compensation, an additional equal amount as liquidated damages, attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216(b).

227.    Wherefore, Plaintiffs demand a money judgment in an amount to be proven at trial, individually and collectively for all other similarly situated employees.

### Fourth Claim for Relief
### Quantum Meruit

228.    Plaintiffs repeats and re-alleges each and every allegation above as if set forth fully and at length herein.

229.    Plaintiffs, and all others similarly situated, performed work and services for Defendants in good faith in exchange for proper and lawful wages for all work done for the Defendants.

230.    Defendants accepted the services provided by Plaintiffs and all others similarly situated.

231.    Plaintiffs, and all others similarly situated, had a reasonable expectation of payment by the Defendants for all hours worked in any given workweek at the proper and lawful rate of pay.

232.    Defendants failed to remunerate Plaintiffs for the reasonable value of the services rendered by Plaintiffs and all others similarly situated to Defendants.

233.    Plaintiffs and all others similarly situated were not paid for the reasonable value of their services rendered to Defendants, such reasonable value determined by the proper and lawful wages to be paid to them, along with other conditions and practices of employment, pursuant to FLSA 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 211(c) and 215(a).

234.    As such, Plaintiffs, and all others similarly situated, are entitled to be paid a reasonable value for their services rendered to Defendants and are entitled to statutory damages pursuant to the FLSA and NYLL for the services provided to Defendants less the amounts actually paid to them, together with an award of interest, costs, disbursements and attorneys' fees.

235.    Wherefore, Plaintiffs demands a monetary judgment in an amount to be proven at trial, individually and collectively for all other similarly situated employees.

## Fifth Claim for Relief
## Declaratory Judgment

236.    Plaintiffs repeats and re-alleges each and every allegation above as if set forth fully and at length herein.

237.    Plaintiffs demands a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. § 201 et seq., NYLL – 12 N.Y.C.R.R. § 142 and Article 6 of the NYLL § 190 et seq.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully requests that this Court grant the following relief:

(1)    As to the First Claim for Relief, award Plaintiffs damages arising out of the breach of contract.

(2)    As to the Second Claim for relief, award Plaintiffs his unpaid overtime wages due under the New York Minimum Wage Act and the Regulation thereunder including 12 N.Y.C.R.R. § 142-2.2, together with maximum liquidated damages, prejudgment interest, costs and attorneys' fees pursuant to NYLL § 663;

(3)    As to the Second Claim for Relief, award Plaintiffs any and all outstanding (additional) wages, including overtime wages plus prejudgment interest, costs, disbursements and attorneys' fees pursuant to pursuant to NYLL § 198;

(4)    As to the Second Claim for Relief, award Plaintiffs damages arising out of violation of NYLL;

(5)    As to the Third Claim for Relief, award Plaintiffs his unpaid wages due under the FLSA, together with maximum liquidated damages, costs and attorneys' fees pursuant to 29 U.S.C. § 216(b);

(6)    As to the Fourth Claim for Relief, award Plaintiffs the quantum meruit value of his labor.

(7)     As to the Fifth Claim for Relief, a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. § 201 et seq., NYLL – 12 N.Y.C.R.R. § 142 and Article 6 of the NYLL § 190 et seq.;

(8)     Award Plaintiffs any relief requested or stated in the preceding paragraphs, but which has not been requested in the WHEREFORE clause or "PRAYER FOR RELIEF", in addition to the relief requested in the wherefore clause/prayer for relief;

(9)     If liquidated damages pursuant to FLSA 29 U.S.C. § 216(b) are not awarded, an award of prejudgment interest pursuant to 28 U.S.C. § 1961;

(10)    Award prejudgment interest pursuant to New York Civil Practice Law and Rules §§ 5001-02;

(11)    Award post judgment interest pursuant to 28 U.S.C. § 1961 and/or the New York Civil Practice Law And Rules § 5003;

(12)    Award attorneys' fees, costs and further expenses of this action pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198(1)-(2) and 663(1);

(13)    Award Plaintiffs all other relief requested in this Amended Complaint;

(14)    Award Plaintiffs other, further and different relief as the Court deems just and proper; and

(15)    An injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Dated: September 19, 2023
Brooklyn, New York

Respectfully submitted,

**MARZEC LAW FIRM, P.C.**

By:    */s/ Darius A. Marzec*
Darius A. Marzec, Esq.
Attorneys for Plaintiffs
*PATRYK WILK, PAWEL KOTWICA,*
*PAWEL WIACEK, TOMASZ WISLOCKI*
*and FELIX LEWIS INDIVIDUALLY AND*
*COLLECTIVELY FOR ALL OTHER*
*FORMER AND CURRENT EMPLOYEES*
776A Manhattan Avenue, Suite 104
Brooklyn, New York 11222
(718) 609-0303
dmarzec@marzeclaw.com

## VERIFICATION

STATE OF NEW YORK    )
                              ) ss.:
COUNTY OF KINGS      )

PATRYK WILK, being duly sworn, deposes and says:

       I am the Plaintiff in this proceeding. I have read the Verified Complaint and know

the contents thereof and the same are true to my knowledge, except those matters therein

which are stated to be alleged on information and belief, and as to those matters, I believe

them to be true.



PATRYK WILK

On the 29th day of June, 2023, before me personally appeared PATRYK WILK, personally known to me or provided to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in capacity, and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

Darius Adam Marzec
Notary Public, State of New York
Registration No. 02MA6351611
Qualified in New York County
Commission Expires December 5, 2024

## VERIFICATION

STATE OF NEW YORK     )
                               ) ss.:
COUNTY OF KINGS       )

PAWEL KOTWICA, being duly sworn, deposes and says:

      I am the Plaintiff in this proceeding. I have read the Verified Complaint and know

the contents thereof and the same are true to my knowledge, except those matters therein

which are stated to be alleged on information and belief, and as to those matters, I believe

them to be true.

                                                  PAWEL KOTWICA

On the 28th day of June, 2023, before me personally appeared PAWEL KOTWICA, personally known to me or provided to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in capacity, and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

                 Notary Public

Darius Adam Marzec
Notary Public, State of New York
Registration No. 02MA6351611
Qualified in New York County
Commission Expires December 5, 2024

## VERIFICATION

STATE OF NEW YORK      )
                                ) ss.:
COUNTY OF KINGS        )

PAWEL WIACEK, being duly sworn, deposes and says:

I am the Plaintiff in this proceeding. I have read the Verified Complaint and know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters, I believe them to be true.

_____
PAWEL WIACEK

On the 14th day of July, 2023, before me personally appeared PAWEL WIACEK, personally known to me or provided to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in capacity, and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Darius Adam Marzec
Notary Public, State of New York
Registration No. 02MA6351611
Qualified in New York County
Commission Expires December 5, 2024