# MARZEC LAW FIRM, P.C.

DARIUS A. MARZEC IS LICENSED TO PRACTICE LAW IN: NEW YORK
NEW JERSEY • CONNECTICUT • MASSACHUSETTS • PENNSYLVANIA
WASHINGTON, D.C. • ILLINOIS • FLORIDA • CALIFORNIA • HAWAII

**BROOKLYN OFFICE**
776A Manhattan Ave., Ste 104
Brooklyn, NY 11222
Phone: (718) 609-0303
Facsimile (718) 841-7508
dmarzec@marzeclaw.com

**Via ECF**

February 18, 2025

Honorable Joseph A. Marutollo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    <u>Wilk et al. v. Quality Installations of NY, Inc. et al.</u>
       Case No.: 1:23-cv-06945 (NRM) (JAM)

Dear Magistrate Judge Marutollo:

We represent Plaintiffs Patryk Wilk, Pawel Wiacek, Pawel Kotwica, Tomasz Wislocki, Felix Lewis, Dawid R. Korczynski, Mikolaj Czyzewski and Marcin Mokrzycki (collectively "Plaintiffs") in the above-referenced action. We write pursuant to Your Honor's Minute Order, entered February 11, 2025, denying the parties' <u>Cheeks</u> motion without prejudice (Dkt. Doc. 69) and ordering the parties to execute an amended settlement agreement that narrows the released claims to those arising out of this action and file their renewed motion for judicial approval of the proposed amended settlement agreement by February 19, 2025.

Plaintiffs and Defendants, Antoni Perlicki Daniel Perlicki, Marek Babula, Anna Wilk, Grzegorz Nowak, Grzegorz Zuber, Sebastian Ploszaj, Piotr Milewski, Heeralall Ramcharran, Rachel Klepadlo, Sylwester Sadowski (collectively "Individual Defendants"), Quality Installations of NY, Inc., Quality Installations of New York 2, Inc. and East Coast Office Furniture, Inc. (collectively "Corporate Defendants") (collectively with the Individual Defendants, "Defendants") (Plaintiffs and Defendants are collectively "the Parties") hereby request Court approval of the amended Settlement Agreement reached by the Parties in the instant action.

This renewed motion for judicial approval of the proposed settlement is made in accordance with <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015) and includes: (1) a fully executed copy of the proposed amended Settlement Agreement and any translated copies of the agreement, if applicable; (2) this letter brief analyzing the factors set forth in <u>Wolinsky v. Scholastic Inc.</u>, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012) and related cases; and (3) as attorneys' fees are included in the amended Settlement Agreement, time and billing records and copies of retainer agreements of the Marzec Law Firm, P.C. ("MLF"). A true copy of the fully executed proposed amended Settlement Agreement is attached hereto as **Exhibit A.**

When reviewing an FLSA settlement, courts examine the following factors: "(1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the

ability of the defendants to withstand a larger judgment; and (6) the range of reasonableness of the settlement amount in light of the best possible recovery and all the risks of litigation." Abrar v. 7-Eleven, Inc., 2016 WL 1465360 *2 (E.D.N.Y. 2016) (citations omitted). Courts will also consider whether the settlement is the result of an arm's length negotiation conducted in good faith by counsel with significant experience litigating wage and hour claims.

A.  Claims Alleged In The Amended Complaint
The settlement is based upon the five (5) causes of action as alleged in the Amended Complaint: (1) breach of contract, (2) violations of the NYLL, (3) violations of the FLSA, (4) quantum meruit and (5) declaratory judgment. (Dkt. Doc. 47).

Plaintiffs' primary allegation was that they were not paid the proper overtime rate for all hours worked above 40 hours in any given workweek. Moreover, pursuant to NYLL §§ 195 and 198, Defendants were statutorily required to provide each Plaintiff wage notices "within ten business days of his or her first day of employment...." NYLL § 198(1-b). Defendants also had to provide Plaintiffs with a "wage statement" with each payment of wages. NYLL § 195(3). Plaintiffs also allege that Defendants did not pay for travel to and from each project worksite, were not paid prevailing wages for public works projects and were not paid ½ hour per day for lunch.

Defendants' Answer denied these claims and asserted that Plaintiffs were paid their wages at the correct rate of pay (Dkt. Doc. 49). Defendants' Answer further alleged that Plaintiffs were all exempt from the foregoing wage and hour laws under the Motor Carrier exemption because Plaintiffs were allegedly employees of a company in the business of transporting property by vehicles in interstate commerce, whose job functions affect the safety of vehicular operations in interstate commerce. The Court should note that counsel received minimal documents from Plaintiffs that could be used at trial to support any claims that would result in more benefits than Plaintiffs will receive pursuant to the terms of the proposed amended Settlement Agreement. It is submitted that Plaintiffs would probably receive nothing or close to nothing at trial because of these evidentiary deficiencies. Accordingly, the instant proposed amended Settlement Agreement satisfies the Cheeks factors as the benefits conferred by the settlement far outweigh the risks should Plaintiffs proceed to trial.

B.  The Proposed Amended Settlement Agreement
The amended Settlement Agreement limits the release language as stated in paragraph G of the agreement. The initial proposed Settlement Agreement released claims "which Plaintiffs may ever have had in the past or presently have against any of the Released Parties". The release was revised to state "which Plaintiffs have or may have against the Released Parties as of the date of execution of this Agreement and Release, including, but not limited to, claims under the FLSA, the NYLL, and their implementing regulations". See **Exhibit A.** This exact release language was approved as fair and reasonable, [as] the releases are appropriately limited to wage and hour claims." Jaworski et al. v. Integra Development Group, Inc. et al., Case No.: 1:21-cv-3991-BMC (EDNY) (Minute Order entered 12/18/2023)Zelidon v. Staubitz Meat Mkt., 2021 U.S. Dist. LEXIS 174850, at *7-8 (E.D.N.Y. Sept. 14, 2021) ("Courts generally approve release provisions which, by their specific terms, are limited to wage and hour claims"), *adopted by* 2021 U.S. Dist. LEXIS 203354.

The proposed amended Settlement Agreement is a result of the high degree of success achieved by counsel in litigating this action and the settlement conference held before Your Honor on November 12, 2024. All counsel appeared and a mediator's proposal was conveyed to the parties. Counsel for all Parties filed a joint letter on November 13, 2024 stating that they agreed to a proposal that was slightly

above the settlement recommendation. Minute Entry dated 11/12/2024. The ultimate recovery aside, the time spent on conditionally certifying this case as a FLSA collective action, discovery and successful discovery applications resulted in the settlement herein. The information and documents obtained through discovery are inextricably intertwined with the settlement as both involved a common core of facts and a related legal theory. See Gonzalez v. Scalinatella, Inc., 112 F.Supp.3d 5, 12 (S.D.N.Y. 2015) (the degree of success obtained by the plaintiff is "linked directly to the ability to maintain the case as an FLSA collective action.").

The terms of the settlement were dictated by the Court's Memorandum and Order, dated March 19, 2024, granting in part and denying in part Plaintiffs' motion for conditional certification of a collective class pursuant to the FLSA. See Dkt. Doc. No. 54. The Court preliminarily certified a collective class consisting of furniture installers and drivers employed by the Corporate Defendants between September 19, 2020 through the present. The Order effectively barred Plaintiffs from recovering any damages for alleged violations of the FLSA by the Corporate Defendants prior to September 19, 2020. The settlement's allocation of the Total Settlement Proceeds eliminates the risk that Plaintiffs' damages would be limited to a fraction of their alleged damages as all were allegedly employed by the Corporate Defendants for many years prior to September 19, 2020.

The proposed amended Settlement Agreement requires Defendants to pay Plaintiffs $250,000.00 ("Total Settlement Proceeds") in full satisfaction of Plaintiffs' claims. The Total Settlement Proceeds shall be paid by Defendants to Plaintiffs' counsel in four equal installments of $62,500.00. Defendants shall pay the first installment payment within ten (10) days of Court approval of the settlement and the second through fourth installment payments on the first day of each month for three (3) months beginning one full calendar month after payment of the first installment payment. The following are the payments to be made to Plaintiffs pursuant to the amended Settlement Agreement:

> Patryk Wilk shall be paid $28,000.00 in four equal payments of $7,000.00. Mr. Wilk worked for Defendants from 2022 through 2023 and is the lead plaintiff responsible for originating the instant action;

> Dawid Korczynski worked for Defendants from 2012 to 2023 and shall be paid $25,000.00 in four equal payments of $6,250.00;

> Pawel Wiacek shall receive $20,000.00 in Total Settlement Proceeds as he worked for Defendants from 2013 to 2023 or almost 10 years. The sum of $20,000.00 shall be paid to Mr. Wiacek as follows: $5,000.00 within seven (7) days after receipt by MLF from Defendants of each of the four (4) Installment Payments in the sum of $62,500.00;

> Tomasz Wislocki shall receive $20,000.00 in Total Settlement Proceeds as he worked for Defendants from 2014 to 2023 or almost 9 years. The sum of $20,000.00 shall be paid to Mr. Wislocki as follows: $5,000.00 within seven (7) days after receipt by MLF from Defendants of each of the four (4) Installment Payments in the sum of $62,500.00;

> Felix Lewis shall receive $20,000.00 in Total Settlement Proceeds as he worked for Defendants from 2015 to 2023 or almost 8 years. The sum of $20,000.00 shall be paid to Mr. Lewis as follows: $5,000.00 within

seven (7) days after receipt by MLF from Defendants of each of the four (4) Installment Payments in the sum of $62,500.00;

Mikolaj Czyzewski shall receive $15,311.55 in Total Settlement Proceeds as he worked for Defendants from 2019 to 2023 or more than 4 years. The sum of $15,311.55 shall be paid to Mr. Czyzewski as follows: $3,827.89 within seven (7) days after receipt by MLF from Defendants of each of the four (4) Installment Payments in the sum of $62,500.00;

Pawel Kotwica shall receive $14,000.00 in Total Settlement Proceeds as he worked for Defendants from 2018 to 2022 or almost 4 years. The sum of $14,000.00 shall be paid to Mr. Kotwica as follows: $3,500.00 within seven (7) days after receipt by MLF from Defendants of each of the four (4) Installment Payments in the sum of $62,500.00;

Marcin Mokrzycki shall receive $6,674.00 in Total Settlement Proceeds as he worked for Defendants from 2017 to 2019. The sum of $6,674.00 shall be paid to Mr. Mokrzycki as follows: $1,668.50 within seven (7) days after receipt by MLF from Defendants of each of the four (4) Installment Payments in the sum of $62,500.00; and

MLF shall receive $101,014.45 in Total Settlement Proceeds as and for attorneys' fees and costs, consisting of $1,688.45 in costs incurred and $99,326.00 in attorneys' fees. The sum of $101,014.45 shall be paid to MLF as follows: $26,014.45 within seven (7) days after receipt by MLF of the first of four (4) Installment Payments in the sum of $62,500.00.

If there is a default by Defendants in making any of the payments and if Defendants do not cure the default within seven (7) business days of receipt of a notice of default, Plaintiffs may enter judgment by filing Affidavits of Confession of Judgment signed by all Defendants. The judgment shall be for $250,000.00 less any sums paid by Defendants to Plaintiffs as of the date of the default, together with costs, lawful disbursements and attorneys' fees necessary to secure the judgment.

The proposed amended Settlement Agreement was negotiated at arm's length by counsel experienced in litigating wage and hour claims under the FLSA and NYLL. A variety of factors were discussed and considered, including the proofs and lack of documentary evidence to support the allegations that Plaintiffs were not paid in full for all hours worked. Certified payroll records produced by Defendants were limited and Plaintiffs were not able to produce or obtain sufficient documents to overcome this high burden. Litigation costs were also considered. The Court should respectfully consider the benefits of the settlement in light of the risks associated in proceeding to trial and obtaining an unfavorable verdict. It is respectfully submitted that the Total Settlement Proceeds is many times more than what Plaintiffs would receive at trial based upon the limitation of the collective class period, lack of proofs and Plaintiffs' recollections. Plaintiffs are more than satisfied with the text and substance of the settlement as they are clear-eyed in their knowledge that should they proceed to trial their chances at prevailing is minimal. The Parties believe the settlement represents a reasonable compromise.

## C.  Attorneys' Fees And Costs

MLF is to receive forty percent (40%) of the gross settlement amount. The distribution to MLF is fair, reasonable and consistent with Cheeks. Neither Plaintiffs nor Defendants dispute the reasonableness of MLF's fees in this matter. The total fees expended by MLF is $104,710.00 and consist of 193.8 hours of attorney time. Costs incurred by MLF is $1,688.47. True copies of MLF's retainer agreements are attached hereto as **Exhibit B**. True copies of MLF's time and billing records to date are attached hereto as **Exhibit C.**

Pursuant to Wolinsky v. Scholastic Inc., courts must assess the reasonableness of the fee award where the parties settled on the fee through negotiation. 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012); See 29 U.S.C § 216(b) ("The Court ... *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action.") (emphasis added). In choosing the proper baseline for calculation of a fee percentage, courts should focus on fairly compensating counsel given that "the entire fund, and not some portion [of it], is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." Alleyne v. Time Moving & Storage Inc., 264 F.R.D. 41, 56-61 (E.D.N.Y. 2010). There are 12 factors considered by the Court in approving an award of attorneys' fees and costs. Id. The following factors have the most significance:

iv) *Risks of establishing liability*
The risks of establishing Defendants' liability is the most daunting. Based on Defendants' position that Plaintiffs are categorically barred from recovering any overtime compensation under the FLSA and/or NYLL, this factor weighs strongly in favor of approving the instant settlement. Significantly, all Plaintiffs were given the opportunity to opt out of the settlement if they believed themselves to be entitled to a higher recovery, and none chose to avail themselves of that opportunity. This factor has enormous significance and weighs overwhelmingly in favor of the proposed settlement.

vi) *Risks of maintaining collective action through trial*
This factor weighs in favor of settlement. In keeping with the documents and information gathered from discovery, there is a clear and substantial risk that most Plaintiffs would obtain zero recovery if their claims were individually litigated and, correspondingly, would require much effort for virtually no collective gain. The preliminarily certified collective class includes only those employees who worked for the Corporate Defendants between September 19, 2020 through the present. Thus, Plaintiffs who had worked and incurred damages prior to that date would be barred under the FLSA from litigating their claims.

vii) *Defendants' ability to withstand larger judgment*
Defendants could not withstand a larger judgment than the settlement amount. In fact, the record shows that because of claimed financial difficulties, Defendants insisted on paying the Total Settlement Proceeds in installments rather than a lump sum payment of $250,000.00, in order to protect Defendants' ability to continue operating and paying current employees. Defendants cannot afford, from a strict financial standpoint, to pay more to settle Plaintiffs' claims. This factor weighs heavily in support for the settlement.

ix) *Range of reasonableness of settlement fund in light of risks of litigation*
On this extremely important factor, the Court should find that the settlement is reasonable in light of the substantial risks of litigation. Given the high probability that litigation would yield no recovery

**MARZEC LAW FIRM, P.C.**
**NEW YORK CITY OFFICE**
**776A Manhattan Ave, Suite 104 ·Brooklyn, New York 11222**

whatsoever for most, if not all, Plaintiffs, taken as a whole and balancing all of the Grinnell factors, the settlement is fair, adequate and is clearly reasonable considering the unlikelihood of success otherwise.

"Moreover, when evaluating reasonableness, the Second Circuit has rejected a one-third limit on attorneys' fees in FLSA settlements." Castillo v. Ocean 21, LLC, 2022 WL 18858980 at *4 (E.D.N.Y. 2022) (noting that "fee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.") (internal quotations and citation omitted). In most FLSA cases, it does not make sense to limit fees to 33% of the total settlement. A proportionality rule would be inconsistent with the remedial goals of the FLSA, which the Second Circuit has deemed a "uniquely protective statute." Cheeks, 796 F.3d at 207. In Fisher v. SD Protection Inc., the Court of Appeals held that the district court abused its discretion and erred as a matter of law by enforcing a proportionality standard mandating that the "maximum fee percentage" that counsel may be awarded in an FLSA action is limited to 33% of the total settlement amount. 948 F.3d 593, 602–04 (2d Cir. 2020). "The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." Millea v. Metro-N. R. Co., 658 F.3d 154, 169 (2d Cir. 2011) (emphasis in original) (holding that district court impermissibly limited attorney's fees to one-third of the total recovery); See Hui Luo v. L & S Acupuncture, P.C., 649 F. App'x 1, 3 (2d Cir. 2016) (upholding an award of $64,038 in fees and $4,830.67 in costs, even though plaintiff recovered only $4,130.75; Barbour v. City of White Plains, 700 F.3d 631, 634-35 (2d Cir. 2012) (per curiam) (upholding an award of $290,997.94 in fees and costs, even though plaintiffs recovered only $30,000); Pinzon v. Jony Food Corp., 2018 WL 2371737, at *3 (S.D.N.Y. 2018) (approving settlement agreement when attorneys' fees were five times greater than lodestar in recognition of "the importance of encouraging the swift resolution of [FLSA] cases ... and avoiding creating a disincentive to early settlement ... when settlement has provided Plaintiff with a substantial and speedy result") (citation and internal quotations omitted); Cano v. Nineteen Twenty Four, Inc., 2017 WL 11507654, at *7 (E.D.N.Y. 2017) (finding attorneys' fees that are nearly double the counsel's stated lodestar are reasonable and "in line with other cases in the Second Circuit"); In re Platinum & Palladium Commodities Litig., 2015 WL 4560206, at *3 (S.D.N.Y. 2015) ("Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved."); Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 9 (S.D.N.Y. 2015) (awarding $48,366.50 in attorneys' fees and $1,150.60 in costs, even though plaintiff recovered only $7,500); Grochowski v. Ajet Const. Corp., 2002 WL 465272, at *1 (S.D.N.Y. 2002) (awarding $97,207.50 in attorneys' fees, even though plaintiffs recovered only $26,000); Samborski v. Linear Abatement Corp., 1999 WL 739543, at *4 (S.D.N.Y. 1999) (awarding $110,000 in attorneys' fees and $7,437.59 in costs, even though plaintiffs recovered only $50,000).

In fact, "there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit." Quaratino v. Tiffany & Co., 166 F.3d 422, 426 (2d Cir. 1999) (citation omitted). "[W]e have long held -- and we reiterate today -- that a fee may not be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." Fisher v. SD Protection Inc., 948 F.3d 593, 602 (2d Cir. 2020) (internal quotations omitted).

Accordingly, the Parties respectfully request that the Court approve the proposed amended Settlement Agreement, including approval of the payment of attorneys' fees and costs therein. Upon approval of the proposed settlement and payment of the Total Settlement Proceeds by Defendants, the Parties will file a Stipulation of Dismissal with prejudice.

Respectfully Submitted,
/s/ Darius A. Marzec
Darius A. Marzec

CC:            Jonathan A. Lynn, Esq. via ECF and email (jlynn@oved.com)

Enclosures:    Amended Settlement Agreement
               MLF's retainer agreements and time and billing records